UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:10-cr-00007-JMS-CMM-5 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| BRADLEY SHELTON | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-cr-00007-JMS-CMM |
| | ) | |
| BRADLEY SHELTON, | ) -5 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Bradley Shelton has filed two motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A), and for relief under § 404 of the First Step Act of 2018. Dkt. 1840; 1892. For the reasons explained below, his motions are **DENIED**.

**I.**
**Background**

In March 2011, a jury found Mr. Shelton guilty of conspiracy to distribute 500 grams of methamphetamine mixture and 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851, and distribution of 50 grams or more of methamphetamine mixture in violation of 21 U.S.C. §§ 841(a)(1) and 851. Dkt. 1138 at 1. According to the Presentence Investigation Report, between August 2009 and March 2010, Mr. Shelton was a member of a drug trafficking operation in which he distributed methamphetamine that had been shipped from California to Terre Haute, Indiana. Dkt. 1104 at 6. Over that time, Mr. Shelton distributed approximately 80 ounces or 2.26 kilograms of methamphetamine in the Terre Haute area. *Id.* at 7.

Mr. Shelton faced a guidelines range of 360 months to life imprisonment and a mandatory minimum penalty of life imprisonment.  Dkt. 1104 at 20.  Accordingly, the Court sentenced him to life imprisonment.  Dkt. 1138 at 2.

Mr. Shelton initially filed a Motion for Compassionate Release *pro se*.  Dkt. 1840. After counsel was appointed, Mr. Shelton filed an amended motion.  Dkt. 1892.  Mr. Shelton argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) a change in the law results in a disparity between the sentence he received and the sentence he would receive today; (2) he suffers from serious medical conditions and those conditions render him vulnerable to serious complications from COVID-19 infection; and (3) his facility has failed to adequately address the COVID-19 pandemic placing him at continued risk of contracting illness. Dkt. 1840; Dkt. 1892.  Mr. Shelton also argued that § 404 of the First Step Act of 2018 permits the Court to reduce his sentence.  Dkt. 1840 at 5-10.

The United States opposes the motions. Dkt. 1897. In addition to opposing the merits of Mr. Shelton's motions, the Government argues that Mr. Shelton has failed to adequately exhaust administrative remedies before filing his motions. Dkt. 1897 at 8-9. Because Mr. Shelton's motions establish that he may be raising grounds that implicate Amendment 814 to the United States Sentencing Commission, which took effect on November 1, 2023, the Court ordered Mr. Shelton to file an amended motion if he sought to invoke grounds for compassionate release under Amendment 814.  Dkt. 1928. Mr. Shelton did not file an amended motion in response to the Court's order.  Accordingly, his motions are now ripe for the Court's review.

3

## II.
## Discussion

**A. First Step Act § 404**

In 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010), to address harsh sentencing disparities between crack cocaine offenses and powder cocaine offenses resulting from irrational and "unjustified race-based differences" in federal sentencing between those types of cases. *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Signed into law on December 21, 2018, the First Step Act makes retroactive the Fair Sentencing Act of 2010's reduction in the disparity between crack and powder cocaine sentences for certain defendants convicted of certain crack cocaine offenses. *See* Pub. L. No. 115-391, 132 Stat. 5194, 115th Cong. § 404 (2018). Mr. Shelton's argument for relief under § 404 is meritless. He is not eligible for a sentence reduction under the plain language of § 404 of the First Step Act because he was not convicted of an offense involving crack cocaine.[1] *See id.* (defining a "covered offense" to include only convictions for crack cocaine related offenses); *United States v. Hudson*, 967 F.3d 605, 611 (7th Cir. 2020) ("[A] defendant's conviction for a covered offense is a threshold requirement of *eligibility* for resentencing." (emphasis in original)); *United States v. Dawson*, 2023 WL 334008, at *1 (7th Cir. Jan. 20, 2023) (rejecting a defendant's eligibility for resentencing under

---

[1] The Court notes that Mr. Shelton's argument for relief under § 404 was presented in his *pro se* motion only, and Mr. Shelton's counseled amended motion did not provide further argument for this avenue of relief. However, Mr. Shelton's amended motion stated that he did not intend to "abandon[] of any issues or arguments raised in that original *Motion*" and "specifically adopts any arguments contained in his initial *Motion*." Dkt. 1892 at 1 (italics in original). Mr. Shelton's counsel is cautioned that, once involved, the Court's expectation is that counsel will not preserve meritless arguments previously raised. Counsel's failure to screen out such arguments and acknowledge their abandonment to the Court raises concerns as to whether counsel met his obligation of candor towards the Court.

4

§ 404 because the defendant was not convicted for a crack cocaine offense). For this reason, with regard to relief under § 404, Mr. Shelton's motions are **denied.**

### B. Compassionate Release

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

*1.     Exhaustion*

Mr. Shelton filed a request for compassionate release to the Warden of his facility in January 2022, asking for compassionate release due to a "Debilitated Medical Condition." Dkt. 1897-1 at 1. In his request, he specified only Alpha-1 Antitypsin Deficiency ("AAT") as a debilitating medical condition. *Id.* The warden denied Mr. Shelton's request. Dkt. 1897-2. In his amended motion, Mr. Shelton expands his list of health conditions that require long-term care to include pes cavus deformities, hepatitis C, cirrhosis, and nerve damage in his foot. Dkt. 1892 at 4-6.

In its response, the United States affirmatively invokes the defense of exhaustion, arguing that failure to argue for compassionate release based on these additional conditions in his administrative request precludes him from arguing to the Court that those conditions constitute extraordinary and compelling reasons for release. Dkt. 1897 at 8-9.

Mr. Shelton replies that a defendant need not specify each and every medical condition in their administrative request in order to adequately exhaust administrative remedies and, even if that were required, that any failure to do so is excusable. Dkt. 1903 at 2-3.

Section 3582(c)(1)(A) includes an administrative exhaustion provision, which states that a court may reduce a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement of § 3582(c)(1)(A) is a mandatory claim-processing rule that "must be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). The Seventh Circuit has held that "in order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

Here, Mr. Shelton did not bring to the attention of the Warden several of the medical conditions he asks the Court to find are extraordinary and compelling reasons for release. While Mr. Shelton argues for release based on just one medical condition in his administrative request, he now argues to the Court that a constellation of medical conditions requires him to receive long-term, specialized medical care. There is little similarity between an argument that a single condition is debilitating and an argument that several conditions render him in need of specialized

care, and the latter argument was not brought to the attention of the Warden. The Warden simply could not make a reasoned decision in response to grounds for compassionate release not brought to the Warden's attention. Additionally, Mr. Shelton has not shown that any grounds excusing failure to exhaust apply to him. Because Mr. Shelton did not give the Warden an opportunity to address the arguments for release brought before the Court as he did not raise the same or similar grounds in his petition, Mr. Shelton did not properly exhaust his request administratively, and his Motion for Compassionate Release must be denied.

> 2. *Extraordinary and Compelling Reasons for Release*

In the interest of thoroughness, the Court considers whether, even if Mr. Shelton had exhausted his administrative remedies, he has established extraordinary and compelling reasons for release.

> a. <u>Changes in the Law</u>

First, Mr. Shelton contends that the disparity between the sentence he received and the sentence he might receive if he were sentenced today establishes an extraordinary and compelling reason to release him. Specifically, he argues that his mandatory minimum would no longer be life imprisonment because the prior convictions that enhanced his sentence at the time of his conviction would not do so under current law. The Government contends that the Court is precluded from finding that a change in the law constitutes an extraordinary and compelling reason for release. Dkt. 1897 at 11.

For several years, the Seventh Circuit has repeatedly affirmed its conclusion that non-retroactive statutory changes and new judicial decisions are not extraordinary and compelling reasons for granting compassionate release, whether considered alone or in combination with any other factors. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (holding that non-

retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that district court cannot consider change, whether alone or in combination with any other factor, when determining whether defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction). As summarized by the Seventh Circuit:

> When deciding whether "extraordinary and compelling reasons", 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions.... *There's nothing "extraordinary" about new statutes or caselaw*, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.

*United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (emphasis added; cleaned up); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction")). Under the *Thacker* line of cases, any potential sentencing disparity clearly does not qualify as an extraordinary and compelling reason potentially warranting a sentence reduction, and the Court would abuse its discretion were it to find otherwise.

The Court recognizes that, effective November 1, 2023, the United States Sentencing Commission amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited Nov. 1, 2023). One such new circumstance is related to defendants who received an "unusually long sentence":

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law

> (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The *Thacker* line of cases can be read to hold that the statutory definition of "extraordinary" does not extend to law changes, which means there is a question about whether the Sentencing Commission exceeded its authority when it added this item to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i). *See United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("Broad as [the Commission's] discretion may be, however, it must bow to the specific directives of Congress.").

Though the current state of the law under *Thacker* may foreclose relief, the Court need not, however, reach that question in Mr. Shelton's case because, after a specific directive from the Court to fully develop arguments regarding § 1B1.13(b)(6) if he believed it applicable, Mr. Shelton did not do so. Mr. Shelton therefore abandoned any argument that he can be afforded relief under § 1B1.13(b)(6). For this reason, the Court finds that Mr. Shelton has not carried his burden to show that the fact that he might receive a lower sentence if sentenced today establishes an extraordinary and compelling reason to release him, whether considered alone or together with any other reason.

### b. Health Conditions

Mr. Shelton next argues that his health conditions establish extraordinary and compelling circumstances warranting his release. Mr. Shelton states that he is suffering from AAT, pes cavus deformities, hepatitis C, cirrhosis, and nerve damage in his foot. Dkt. 1892 at 4-6. He asserts that these conditions require long-term, specialized care that he cannot receive in BOP. *Id.* The

9

Government argues that there is no evidence that Mr. Shelton suffers from a terminal condition and there is a lack of evidence supporting the existence of Mr. Shelton's alleged severe medical conditions. Dkt. 1897 at 15.

The record contains no evidence that Mr. Shelton requires care for the medical conditions he identifies. The medical evidence includes no evidence that Mr. Shelton currently suffers from hepatitis C or cirrhosis. With regard to hepatitis C, Mr. Shelton points only to medical records from 2020 in which his doctor noted his "history of Hep C that was treated in April of this year." Dkt. 1892-2 at 1. More recent records indicate that Mr. Shelton's hepatitis C was "resolved." Dkt. 1897-4 at 4. Moreover, the only evidence regarding cirrhosis, far from providing a diagnosis of the condition, states only that he "denies being told he has cirrhosis." Dkt. 1892-2 at 1. With regard to his pes cavus deformities and nerve damage, there is insufficient evidence for the Court to find that the pain caused by these conditions is of the severity that warrants release because there is no medical evidence in the record supporting Mr. Shelton's assertions that his pain is "extreme" or that he could "eventually los[e] his mobility entirely." Dkt 1892 at 4. Lastly, there is no evidence that Mr. Shelton is not receiving treatment for AAT. In sum, there is no evidence supporting any of Mr. Shelton's claims that he requires long-term care for these conditions that he is not receiving in the BOP.[2] Accordingly, the Court declines to exercise its discretion to find that Mr. Shelton has carried his burden to show that his health issues are an extraordinary and compelling reason to grant release, whether considered alone or together with any other reason.

---

[2] In fact, as noted, the record does not demonstrate that Mr. Shelton suffers from some of these conditions at all. Counsel is once again cautioned regarding candor to the Court. Arguing that the Court find he suffers from medical conditions for which there is no medical evidence exceeds the bounds of vigorous advocacy on behalf of his client.

c.     COVID-19 Considerations

The Court does not find that either vulnerability to COVID-19 infection or pandemic mismanagement by the BOP constitute an extraordinary and compelling reason to release Mr. Shelton, either alone or in combination with any other reason.  "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. . . . [F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).  Mr. Shelton has not presented any evidence regarding whether he is vaccinated or whether he is unable to receive or benefit from the vaccine.

Additionally, Mr. Shelton "has not presented any evidence establishing that he is more at risk for an adverse outcome in prison than he would be if released." *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022).  He has not presented "data showing that vaccinated prisoners are at materially greater risk of breakthrough infections than other vaccinated persons." *United States v. Avila*, No. 21-2383, dkt. 19 (7th Cir. Feb. 15, 2022); *United States v. Hoskins*, No. 21-2912, 2022 WL 2187558, at *1 (7th Cir. June 16, 2022) (emphasizing that a defendant needs individualized evidence of why, despite his vaccination, his medical risks are extraordinary compared to the general population).  If a prisoner "would remain at comparable risk outside prison, the possibility of infection cannot be described as an 'extraordinary and compelling' consideration supporting release." *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023); *see also United States v. Santana-Cabrera*, No. 22-2056, 2023 WL 2674363, at *2 (7th Cir. Mar. 29, 2023).  For these reasons, the Court declines to exercise its discretion to find that Defendant has carried his burden to show that the risk he faces from the COVID-19 pandemic is an

extraordinary and compelling reason for relief under § 3582(c)(1)(A), whether considered alone or in combination with any other factor. *Barbee*, 25 F.4th at 533; *Vaughn*, 62 at 1072.

With regard to allegations that the BOP mismanaged the pandemic, allegations that the BOP has failed to provide protection from COVID-19 and subjected Mr. Shelton to inadequate conditions thus violating his constitutional rights might form the basis for relief in a civil suit, but such allegations are not grounds for a sentence reduction under § 3582(c)(1)(A). *See United States v. Miller*, No. 21-1600, 2022 WL 2187555, at *1 (7th Cir. June 16, 2022) ("[T]o the extent that Miller challenges the conditions and medical care at [the prison] more generally, a compassionate-release motion is not the right vehicle.") (cleaned up); *United States v. Montez*, No. 22-1988, 2023 WL 3431239, at *2 (7th Cir. May 12, 2023) (medical issue can be addressed through vehicles other than compassionate release) (cleaned up).

Further, every inmate at the facilities in which Mr. Shelton has served his sentence, and indeed, many inmates across the country, have dealt with similar issues due to the pandemic over the past few years. Mr. Shelton has simply not shown that his situation is extraordinary as compared to other inmates. *United States v. Khelifi*, No. 21-3144, 2022 WL 3925623, at *1 (7th Cir. Aug. 31, 2022) (finding no extraordinary and compelling circumstances where prisoner did not provide individualized evidence for his argument that his prison mishandled the risks of the pandemic). Thus, the Court declines to exercise its discretion to find that Mr. Shelton carried his burden to show that this is an extraordinary and compelling reason for release, whether considered alone or in conjunction with any other reason.[3]

---

[3] The United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. U.S.S.G. 1B1.13 (Nov. 2023). The Court notes that one such circumstance relates to outbreak of infectious disease in prisons. Defendant does not meet the criteria for that extraordinary and compelling reason either. *See* U.S.S.G. 1B1.13(b)(1)(D) (Nov. 2023).

      *3.*     *3553 Sentencing Factors*

Even if the Court were to assume that Mr. Shelton had established an extraordinary and compelling reason, the Court finds that Mr. Shelton is not entitled to compassionate release because the sentencing factors under 18 U.S.C. § 3553 do not weigh in his favor.[4] The Court acknowledges that he has completed a considerable number of educational courses while in BOP and he completed his GED while incarcerated. Dkt. 1892-3 at 1-3. He also has family support, including a residence and job lined up after he is released. Dkt. 1892 at 9. Weighing against him, Mr. Shelton was part of an extensive criminal conspiracy and has a serious criminal history consisting of seven prior felony convictions including a violent crime (criminal recklessness resulting in serious injury in 2003).[5] Dkt. 1104 at 9-14. He also has a long BOP disciplinary history including, most recently, violations filed against him for fighting and assault with serious injury in 2019. Dkt. 1897-8 at 1-5. Further, Mr. Shelton is serving a life sentence; thus, releasing him now would be a substantial reduction in his sentence.

In light of these considerations, the Court finds that releasing Mr. Shelton early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the

---

[4] The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

[5] The Court notes, however, that contributing to the length of his criminal history are several convictions for less serious, non-violent crimes, including two felony convictions for possession of marijuana. Dkt. 1104 at 12.

13

offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("all a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion such as [defendant's] is enough; more would be otiose.").

### III.
### Conclusion

For the reasons stated above, Mr. Shelton's Motions for Compassionate Release, dkt. [1840], dkt. [1892], are **denied**.

**IT IS SO ORDERED.**

Date: 12/15/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel