UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

BRADLEY SHELTON (05)

Case No. 2:10-cr-00007-JMS-CMM

ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:10-cr-00007-JMS-CMM |
| | ) | |
| BRADLEY S. SHELTON, | ) | -05 |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Bradley Shelton (05) has filed a Motion for Compassionate Release, [Filing No. 2002], which is ripe for the Court's review.

**I.**
**BACKGROUND**

On June 15, 2010, Mr. Shelton was charged by Superseding Indictment with one count of Conspiracy to Distribute 500 Grams of Methamphetamine (Mixture) and 100 Kilograms of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851 and one count of Distribution of 50 Grams or More of Methamphetamine (Mixture), in violation of 21 U.S.C. §§ 841(a) and 851. [Filing No. 214.] The offense conduct is described as follows in the Presentence Investigation Report:

> In August 2009, Wesley Hammond was an inmate at the New Castle (Indiana) Correctional Facility. From there, he used a telephone to coordinate with Antrio Hammond and Derrick Worthy the purchase of methamphetamine from sources in California. Wesley Hammond's girlfriend, Jennifer Poltrock, and two of her relatives physically transported methamphetamine from California to Terre Haute, Indiana, for resale.
>
> Poltrock's primary methamphetamine customers in Terre Haute included…Bradley Shelton….

2

[Individual A] testified that he began obtaining methamphetamine from Shelton approximately six months prior to [Individual A's] arrest in late December 2009. [Individual A] stated that he obtained methamphetamine from Shelton approximately once per week. He occasionally paid for it at the time of delivery, and it was occasionally partially fronted. [Individual A] began obtaining half-ounce quantities of methamphetamine from Shelton, but the amount increased over time to four ounces. On December 30, 2009, [Individual A] executed a controlled purchase of two ounces of methamphetamine from Shelton for $1,400, including $400 for methamphetamine Shelton had previously fronted to [Individual A] and $1,000 toward the two ounces, leaving a balance of $2,000. [Individual A] made a controlled delivery of $2,000 to Shelton on December 31. Both transactions occurred at the residence of Shelton's sister [in] Terre Haute. Wire surveillance later established that Shelton also maintained a firearm at this residence.

\*          \*          \*

On March 26, Shelton delivered $9,000 to Poltrock to pay for previously fronted methamphetamine. At the same time, Poltrock delivered five ounces of methamphetamine to Shelton. The transaction occurred at 521 South 14th Street in Terre Haute. After Shelton left the residence, the Terre Haute Police Department interdicted Shelton's vehicle and seized approximately five ounces of methamphetamine from him.

Following Shelton's arrest on March 26, he provided a confession to Detective Denzil Lewis of the Vigo County Drug Task Force. Shelton advised Detective Lewis that he had distributed blue methamphetamine since the summer of 2009. Shelton stated that he typically received approximately five ounces of methamphetamine per delivery. Based upon Shelton's confession and the fact that Poltrock transported methamphetamine to Terre Haute on approximately sixteen occasions, Shelton is accountable for the distribution of 80 ounces (2.26 kilograms of methamphetamine).

[Filing No. 1104 at 6-7.]

On March 15, 2011, a jury convicted Mr. Shelton on both the Conspiracy to Distribute 500 Grams of Methamphetamine (Mixture) and 100 Kilograms of Marijuana and the Distribution of 50 Grams or More of Methamphetamine (Mixture) counts. [Filing No. 842.] On September 30, 2011, because of his prior criminal history, the Court sentenced Mr. Shelton to mandatory life in prison on each count, to be served concurrently. [Filing No. 1138.]

Mr. Shelton, through counsel, has filed his third Motion for Compassionate Release in this case. [Filing No. 2002.] He argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) he would receive a lesser sentence if sentenced today due to changes in the mandatory minimum sentence under § 841; (2) the Court did not submit his prior offenses to a jury to determine whether they were committed on separate occasions for purposes of sentencing, which was required under *Erlinger v. United States*, 602 U.S. 821 (2024); and (3) he suffers from serious health conditions. [Filing No. 2003 at 4-10.] He also argues that consideration of the § 3553(a) factors warrant compassionate release. [Filing No. 2003 at 11-15.] The Government has responded to Mr. Shelton's Motion for Compassionate Release, addressing his arguments and asserting that he did not exhaust his administrative remedies, [Filing No. 2007 at 5-35], and Mr. Shelton has filed a reply, [Filing No. 2009].

On June 3, 2026, the Court ordered Mr. Shelton to show cause by July 2, 2026 why his argument regarding a nonretroactive change in sentencing law should not be denied in light of the United States Supreme Court's recent decision in *Rutherford v. United States*, 608 U.S. ----, 146 S. Ct. 1320 (2026). [Filing No. 2087.] Mr. Shelton filed a response, [Filing No. 2089], and the Government filed a response to Mr. Shelton's filing, [Filing No. 2093]. Mr. Shelton's Motion for Compassionate Release is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

4

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release:  First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2).  If a court finds that extraordinary and compelling reasons exist and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable."  U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute.  *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).  The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).  On this point, the United States Sentencing Commission amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13 (Nov. 2023).

The Court discusses each of Mr. Shelton's arguments, but first addresses whether he exhausted his administrative remedies.

### A.      Exhaustion of Administrative Remedies

In his Motion for Compassionate Release, Mr. Shelton asserts that he filed a request for administrative relief on July 31, 2024 and that the Warden did not respond, so he has exhausted his administrative remedies.  [Filing No. 2003 at 2.]

The Government argues in its response that Mr. Shelton has not provided any evidence that he submitted a request for administrative relief and that "BOP records dated November 20, 2024 indicate that [he] has not filed any requests for compassionate release since April 21, 2022." [Filing No. 2007 at 5.]

Mr. Shelton argues in his reply that he sent his request for compassionate release to the Warden on July 31, 2024 via certified mail, but that the Warden refused delivery of the request. [Filing No. 2009 at 1-2.] In a footnote, he points to a Certified Mail Receipt signed by an employee of the facility where he was being housed and United States Postal Service ("USPS") tracking results "showing that after signing for the letter, the prison 'refused' the letter." [Filing No. 2009 at 1.]

The Certified Mail Receipt and USPS tracking results that Mr. Shelton submits with his reply indicate that he sent something to the Warden at USP Coleman II on July 31, 2024, which was "refused" when it was delivered to USP Coleman II. [Filing No. 2009-1; Filing No. 2009-2.] While Mr. Shelton does not present any evidence reflecting that what he sent was a request for compassionate release, in the interest of review on the merits, the Court finds that the Certified Mail Receipt and the USPS tracking results are sufficient to show that he exhausted his administrative remedies related to his request for compassionate release and goes on to consider the parties' substantive arguments.

### B. Extraordinary and Compelling Reasons

#### 1. *Changes to Mandatory Minimum Sentence Under § 841*

Mr. Shelton argues in support of his Motion for Compassionate Release that "[u]nder the current version of 21 U.S.C. § 841(b)(1)(A), [his] mandatory sentence would be not less than fifteen (15) years if he has received a prior conviction for a serious drug felony or serious violent

felony, or no less than twenty-five (25) years if he has two or more prior convictions for a serious drug felony or serious violent felony." [Filing No. 2003 at 6.] However, in response to the Court's June 3, 2026 Order to Show Cause, [Filing No. 2087], Mr. Shelton states that he "identified amendments to the sentencing guidelines in his Motion," and that "[t]hese guidelines have…not been made retroactive and this claim is…likely precluded by the finding in *Rutherford*." [Filing No. 2089 at 2.] Accordingly, the Court considers Mr. Shelton's argument that he would receive a lesser sentence under § 841 if sentenced today to be abandoned.

In any event, Mr. Shelton's argument related to changes to § 841 is without merit. U.S.S.G. § 1B1.13(b)(6) provides:

> **(6) Unusually Long Sentence.** – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

The Seventh Circuit Court of Appeals has held that a nonretroactive change in the law, "whether alone or in combination with other factors," cannot be considered an extraordinary and compelling reason for compassionate release. *United States v. Thacker*, 4 F.4th 569, 574-76 (7th Cir. 2021) (holding that nonretroactive change to § 924(c) cannot constitute an extraordinary and compelling reason and explaining that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute") (citation omitted). Most significantly, the United States Supreme Court considered this exact issue just two months ago in *Rutherford*, and held that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reason[n]'

7

that 'warrant[s]' a sentence reduction."  146 S. Ct. at 1330 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

It explained:

> The disparity created by Congress's amendment to § 924(c) does not satisfy [the] definition [of "extraordinary and compelling"].  Far from "extraordinary," nonretroactive amendments to criminal penalties are the norm.  Ordinarily, we have explained, statutory changes to federal penalties only benefit *future* offenders. Congress sometimes deviates from the default, as it did in the Act, by extending the revised penalties to defendants not yet sentenced.  Even then, some measure of prospectivity is par for the course: The ordinary practice is to withhol[d] that change from defendants already sentenced.  And regardless of whether the line is drawn at the offense or the sentence, a nonretroactive penalty change necessarily creates a disparity between those who receive the benefit and those who do not…. Such a disparity is an unexceptional feature of a system in which nonretroactivity is the default.
>
> As for "compelling": It is hard to see how Congress's deliberate decision *not* to extend newly reduced penalties to those already sentenced could be a convincing reason that warrants a reduction.  As we have explained, Congress decided to apply the lower prison sentences to some violators of § 924(c) – those for whom a sentence had not yet been imposed – but not others.  In doing so, Congress reinforced its interest in finality and avoided burdening district courts with additional litigation.  Treating the disparity resulting from § 924(c)'s amendment as a compelling reason for reducing a sentence would undermine Congress's choice to leave the sentence intact.

*Rutherford,* 146 S. Ct. at 1330-31 (quotations and citations omitted, emphasis in original).  The

Supreme Court's decision in *Rutherford* applies with equal force to nonretroactive changes to the

law outside of the § 924(c) context.

In short, and as Mr. Shelton concedes, the nonretroactive changes to § 841 – even if they

would lead to a lesser sentence for Mr. Shelton if he were sentenced today – do not constitute an

extraordinary and compelling reason for release, whether considered alone or in combination with

any other factor.

    **2.**  *Failure to Submit Prior Offenses to a Jury Under* Erlinger

Mr. Shelton argues in support of his Motion for Compassionate Release that his sentence

is unconstitutional under *Erlinger* because "[the] fact laden question [of whether Mr. Shelton's

8

prior offenses were committed on separate occasions] should be decided by a jury beyond a reasonable doubt and not a judge because of the protections one has under the Sixth Amendment." [Filing No. 2003 at 5.]  He notes that the Court's determination that his offenses took place on separate occasions resulted in an enhancement under § 851 that ultimately led to his life sentence. [Filing No. 2003 at 5.]

The Government argues that *Erlinger* only discussed the separate-occasions analysis under the Armed Career Criminals Act and not related to the mandatory minimum sentencing scheme of the Controlled Substances Act, which applied to Mr. Shelton.  [Filing No. 2007 at 7.]  It argues further that Mr. Shelton could have raised his argument on appeal and did not do so, and that he cannot raise his argument through a motion for compassionate release.  [Filing No. 2007 at 7-9.]

In his reply, Mr. Shelton argues that although *Erlinger* dealt with the Armed Career Criminal Act, the holding "remains applicable" in the § 851 context.  [Filing No. 2009 at 2.]  He asserts that one goal of the First Step Act was to "reduce the size of the federal prison population," and that allowing the Court "to consider intervening changes of law or fact in exercising their discretion to reduce a sentence" furthers that purpose.  [Filing No. 2009 at 2-3.]

Mr. Shelton's argument attacks the validity of his sentence and is not properly brought through a motion for compassionate release.  Rather, Mr. Shelton can only challenge his sentence through a petition filed pursuant to 28 U.S.C. § 2255.  *See United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021).  Mr. Shelton has filed several previous § 2255 petitions, [Filing No. 1344; Filing No. 1530; Filing No. 2029], which the Court has denied, [Filing No. 1378; Filing No. 1575;

Filing No. 2064]. He must receive permission from the Seventh Circuit Court of Appeals to file another successive § 2255 petition, 28 U.S.C. § 2255(h), and he has not done so.[1]

Mr. Shelton's argument that his sentence is unconstitutional under *Erlinger* is not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other factor.

### 3. Medical Conditions

Finally, Mr. Shelton argues that his health has declined over the years and that he suffers from pes cavus deformities, nerve-ending damage from surgeries, and Cirrhosis, and is a Hepatitis C carrier and a carrier of Alpha-1 antitrypsin deficiency. [Filing No. 2003 at 8-9.] He states that he has not received medical attention for his conditions and his conditions have worsened over time. [Filing No. 2003 at 9-10.]

In its response, the Government contends that Mr. Shelton's argument related to his medical conditions is taken almost verbatim from a previous Motion for Compassionate Release, and that he has not presented any evidence that he suffers from any of the conditions that he mentions. [Filing No. 2007 at 9-10.] The Government notes that Mr. Shelton refers to Exhibits A and B to support his medical-conditions argument, but did not attach any exhibits to his motion. [Filing No. 2007 at 10.]

---

[1] In any event, Mr. Shelton's argument under *Erlinger* – which is not supported by citation to any caselaw – fails. Even if *Erlinger* applies to sentencing enhancements under the Controlled Substances Act, there is no precedent for applying it retroactively. *See United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("new judicial decisions" do not constitute an extraordinary and compelling reason for compassionate release); *United States v. Tompkins*, 2025 WL 1042816, at *4 (N.D. Ill. Apr. 8, 2025) (Supreme Court case that changed what a sentencing judge could consider in connection with § 924(c)'s mandatory minimum was nonretroactive and did not constitute an extraordinary and compelling reason for a sentence reduction).

Mr. Shelton argues in his reply that although his health issues "are not terminal, they still fall under the definitions of extraordinary and compelling due to the decline of him being able to care for himself within the intense environment he is placed in." [Filing No. 2009 at 3.]

U.S.S.G. § 1B1.13(b)(1)(B) and (C) provide that an extraordinary and compelling reason exists where:

(B) The defendant is--

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

In December 2022, Mr. Shelton, through the same counsel who filed his current Motion for Compassionate Release, filed a brief in support an earlier Motion for Compassionate Release which contained the same argument regarding his medical issues and also provided some of Mr. Shelton's medical records. [Filing No. 1892 at 4-6; Filing No. 1892-1; Filing No. 1892-2.] The Court denied the earlier Motion for Compassionate Release, finding that the evidence Mr. Shelton had provided did not support a finding that his medical issues constituted an extraordinary and compelling reason for release. [*See* Filing No. 1953 at 9-10.] Now, Mr. Shelton asserts the same argument regarding his medical issues nearly verbatim, but does not even attach any supporting medical records this time around. Indeed, even after the Government noted in its response that Mr. Shelton had referred in his supporting brief to Exhibits A and B as his medical records but had

11

not provided the exhibits, Mr. Shelton still did not provide them with his reply brief or otherwise address this shortcoming. Mr. Shelton's Motion for Compassionate Release is completely devoid of any evidence regarding the extent of his medical conditions and how or why they entitle him to relief under U.S.S.G. §1B1.13(b)(1).[2]

Mr. Shelton has not shown that his claimed medical conditions constitute an extraordinary and compelling reason for release, whether considered alone or in combination with any other reason.

Because Mr. Shelton has not shown that there are extraordinary and compelling reasons for his release, the Court need not consider whether Mr. Shelton is a danger to any other person or to the community or whether the § 3553(a) factors warrant release. Mr. Shelton's Motion for Compassionate Release, [Filing No. 2002], is **DENIED**.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Shelton's Motion for Compassionate Release. [2002.]

Date: 7/31/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

---

[2] The Court notes that repeating a prior argument without any evidentiary support, particularly when the argument has already been rejected, wastes both opposing counsel's and the Court's time. Mr. Shelton's counsel's unsupported medical-conditions argument is woefully deficient, and constitutes a categorical waiver of the issue for purposes of the instant motion. *See, e.g., Jackson v. City of Madison*, 176 F.4th 1005, 1016 (7th Cir. 2026) (undeveloped arguments are waived).